# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **TENISHA WOODS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:20-cv-01724-ACA |
| } | |
| **COMISSIONER,** } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRTAION,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Tenisha Woods appeals the decision of the Commissioner of Social Security denying her claim for supplemental security income. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

### I.   PROCEDURAL HISTORY

Ms. Woods applied for supplemental security income on January 19, 2018, alleging disability beginning March 11, 2017. (R. at 227). The Commissioner initially denied Ms. Woods' claim (*id.* at 116–120), and Ms. Woods requested a hearing before an Administrative Law Judge ("ALJ") (*id.* at 123–125). After holding a hearing (r. at 70–106), the ALJ issued an unfavorable decision (*id.* at 53–

69). The Appeals Council denied Ms. Woods' request for review (*id.* at 1–7), making the Commissioner's decision final and ripe for the court's judicial review. *See* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks

omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Woods had not engaged in substantial gainful activity since her January 19, 2018 application date. (R. at 58). The ALJ found that Ms. Woods' degenerative joint disease, diabetes mellitus, depression, and bipolar disorder were severe impairments, but that her obesity, substance addiction disorder, and degenerative disc disease were non-severe impairments. (*Id.*). The ALJ then concluded that Ms. Woods does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 58–60).

After considering the evidence of the record, the ALJ determined that Ms. Woods had the residual functional capacity to perform light work except that she faced some additional physical and environmental limitations. (R. at 60–61). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that Ms. Woods was unable to perform any past relevant work. (*Id.* at 62). But the ALJ concluded that jobs existed in significant numbers in the national economy that Ms. Woods could perform, including a housekeeping cleaner, a bottling line attendant, and a small product assembler. (*Id.* at 63). Accordingly, the ALJ determined that Ms. Woods had not been under a disability, as defined in the Social Security Act, since she filed her application on January 19, 2018. (*Id.* at 64).

## IV.  DISCUSSION

Ms. Woods argues that the court should reverse and remand the Commissioner's decision for two reasons: (1) because the ALJ failed to properly evaluate the opinion of consultative examiner, Dr. Samuel Fleming; and (2) because the ALJ did not give great weight to the opinion of her treating physician, Dr. Janie Techner. (Doc. 11).

### 1.   The Evaluation of the Consultative Examiner's Opinion

Ms. Woods' first argument is that the ALJ did not properly evaluate the opinion of consultative examiner Dr. Fleming. (Doc. 11 at 14–24).

Dr. Fleming conducted one neuropsychological examination of Ms. Woods and opined that she did "not have a good prognosis" because both her cognitive ability and insight were limited. (R. 790). Dr. Fleming also opined that Ms. Woods was incapable of "understanding, carrying out, or remembering instructions" and was incapable of "responding appropriately to supervisors, coworkers, or work pressures in a work setting." (*Id.*). The ALJ found Dr. Fleming's assessment unpersuasive because it was "not supported by [Ms. Woods'] ability to complete testing and [was] inconsistent with her activities of daily life and mostly normal psychiatric findings throughout the rest of the longitudinal record including normal judgment and thought content and mood and affect." (*Id.* at 62).

Ms. Woods raises three alleged errors related to the ALJ's treatment of Dr. Fleming's medical opinion.

First, Ms. Woods appears to argue that the ALJ substituted his opinion for that of Dr. Fleming. (Doc. 11 at 14–18). Ms. Woods cites a number of cases that stand for this general proposition, but she advances no specific argument regarding how the ALJ did so in this case. Nevertheless, although an ALJ "may not make medical findings" himself, the ALJ's responsibility is "to resolve conflicting medical opinions." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (finding that "the ALJ did not usurp the role of a physician" by weighing the

5

credibility of a medical expert's opinion "in light of other record evidence"). And that is what the ALJ did here.

Second, citing *McClurkin v. SSA*, 625 F. App'x 960 (11th Cir. 2015), Ms. Woods argues that the ALJ "failed to state with at least 'some measure of clarity' the grounds for his decision in repudiating the opinion of an examining physician." (Doc. 11 at 18). But the ALJ's specific explanation for rejecting Dr. Fleming's opinion (*see* r. at 62) belies Ms. Woods' position. Therefore, this argument is not persuasive.

Third, Ms. Woods argues that the court should find that the ALJ improperly evaluated Dr. Fleming's opinion based on the Seventh Circuit's "degree of suspicion" standard adopted in *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995). (Doc. 11 at 19–24). As counsel for Ms. Woods acknowledges, the Eleventh Circuit has not adopted this standard. (Doc. 11 at 19–24). Therefore, this court will not follow it either. But even if *Wilder* were controlling, *Wilder* is distinguishable from the facts of this case. In *Wilder*, the consulting physician's opinion was the only evidence of the claimant's impairments. *See Wilder*, 64 F.3d at 337–38. Here, the record contains other evidence about Ms. Woods' mental limitations. (*See* R. 594, 598, 607, 610–11, 770–71, 801). Accordingly, *Wilder* does not assist Ms. Woods. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th. Cir. 2019)

(explaining that *Wilder* is inapposite where the ALJ does not reject the only medical evidence about a claimant's impairments).

    2.    <u>The Evaluation of the Treating Physician's Opinion</u>

Ms. Woods' second argument is that the ALJ failed to properly evaluate the opinion of her treating physician, Dr. Techner, that Ms. Woods had limitations which precluded work "due to low back pain." (Doc. 11 at 24).

As an initial matter, it appears that Ms. Woods' argument operates from the faulty premise that Dr. Techner identified any limitation based on low back pain. Dr. Techner's report contains a handwritten notation that "LBP + ADD" are the conditions that caused Ms. Woods' limitations. (R. at 364). In her brief, Ms. Woods misquotes the record as noting that "Low back pain and Attention Deficit Disorder" are the conditions that caused her limitations. (Doc. 11 at 25). But there is nothing in the record to suggest that lower back pain is the proper reading of Dr. Techner's notes. In fact, during her hearing, Ms. Woods answered a series of questions from the ALJ regarding allegations of back pain and stated she had never sought or received treatment for lower back pain. (R. at 86). Nevertheless, as explained below, even if Dr. Techner was referencing low back pain, the ALJ has adequately explained why he rejected Dr. Techner's opinions about Ms. Woods' physical limitations.

Ms. Woods claims that the ALJ failed to accord proper weight to Dr. Techner's opinion without articulating good cause for doing so, as required by the Eleventh Circuit's treating physician rule. (Doc. 11 at 24–29). The Commissioner argues that Ms. Woods' reliance on the treating physician rule is misplaced because the Social Security Administration adopted new regulations governing how the Commissioner evaluates medical opinions for claims like Ms. Woods' filed after March 27, 2017. (Doc. 12 at 7–19). Ms. Woods acknowledges that "[t]he 'treating physician rule' has been abolished by Regulation but remains in effect by Eleventh Circuit precedent." (Doc. 11 at 26). The court need not resolve this dispute regarding which standard applies to the evaluation of Dr. Techner's opinion because under either framework, the ALJ's decision is supported by substantial evidence.

Under the new regulations, an ALJ need not give any special weight to any medical opinion, including that of a treating physician. 20 C.F.R. § 416.920c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* at § 416.920c(c).

Supportability and consistency are the most important factors, and therefore, the ALJ must explain how he considered those factors. *Id.* at § 416.920c(b)(2). The ALJ may, but is not required to, explain how he considered the other factors. 20 C.F.R. § 416.920c(b)(2).

The Eleventh Circuit's treating physician rule requires that an ALJ give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1240 (11th Cir. 2004) (internal quotation marks and citation omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41.

Dr. Techner completed a physical capacities form in support of Ms. Woods' disability application. (R. at 364). Dr. Techner opined that Ms. Woods could sit upright for less than thirty minutes at a time and stand for less than thirty minutes at a time. (*Id.*). According to Dr. Techner, Ms. Woods would be off task more than half of a normal 8-hour workday and would miss more than half of work in a 30-day period. (*Id.*). Dr. Techner also opined that in an 8-hour workday, Ms. Woods must lie down, sleep, or sit with her legs propped up at waist level or above for six hours. (*Id.*).

The ALJ found that these opinions were "unpersuasive." (R. at 62). The ALJ reasoned that Dr. Techner's opinions were "unsupported by scant cited findings" that were "very inconsistent with the mostly normal physical findings." (R. at 62). Specifically, the ALJ explained inconsistencies with another doctor's finding that Ms. Woods exhibited full muscle strength, no evidence of atrophy, and had the "ability to ambulate normally without assistive device." (R. at 62, 756). And as for Dr. Techner's suggestion that "ADD" was an underlying condition causing the limitation, the ALJ explained this assessment was inconsistent with Ms. Woods' "mixed psych findings." (*Id.* at 62).

The ALJ's explanation that Dr. Techner's opinion was neither consistent with nor supported by the record satisfies the ALJ's regulatory obligation and establishes good cause for not giving substantial or considerable weight to Dr. Techner's opinion under applicable Eleventh Circuit precedent. *See Phillips*, 357 F.3d at 1240–41; *Crawford*, 363 F.3d at 1159–61.

## V. CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Woods's applications for supplemental security income. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 27, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE